IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
ROCK HILL DIVISION

| | | |
|---|---|---|
| Boots Smith Oilfield Services, LLC, | ) | Civil Action No.: 0:11-cv-02166-JFA |
| | ) | |
| Plaintiff, | ) | |
| | ) | **COMPLAINT** |
| vs. | ) | (Jury Trial Requested) |
| | ) | |
| Patriots Energy Group and | ) | |
| Universal Ensco, Inc., | ) | |
| | ) | |
| Defendant. | ) | |
| | ) | |

Boots Smith Oilfield Services, LLC, complaining of the Defendants, above-named, and does allege and show unto this Honorable Court as follows:

## THE PARTIES

1. Boots Smith Oilfield Services, LLC ("Plaintiff," or "Smith") is a Mississippi limited liability corporation with its principal place of business located in Mississippi. Smith is duly authorized and registered to do business in the State of South Carolina

2. Defendant, Patriots Energy Group ("PEG") is a South Carolina joint agency organized with its principal place of business located in York County, South Carolina and is duly authorized and registered to do business in the State of South Carolina. Defendant, Universal Ensco, Inc. ("UEI") is, upon information and belief, a Texas limited liability company with its principal place of business located in Texas, and UEI is duly authorized and registered to do business in the State of South Carolina.

## JURISDICTION AND VENUE

This Court has subject matter jurisdiction over this case pursuant to 28 U.S.C. §1332(a)(1) in that complete diversity of citizenship exists between the parties and the amount in

controversy exceeds $75,000.00, exclusive of interest or costs. Venue is proper in the case under 28 U.S.C. § 1391(b) because a substantial part of the events or omissions giving rise to the claim occurred, and the Property that is the subject of the action is situated in this judicial district.

**FACTS**

3.     PEG is a governmental entity comprised of three natural gas authorities, York County Natural Gas Authority ("YCNGA"), Chester County Natural Gas Authority ("CCNGA"), and Lancaster County Natural Gas Authority ("LCNGA"); PEG and was formed in part for the purpose of building an approximately thirty-nine mile gas pipeline to transport natural gas to the areas served by the PEG member entities (the "Project"). PEG hired UEI to manage and oversee the Project, specifically including oversight of Plaintiff's work on the Project. At all times relevant hereto UEI was the agent of PEG with actual and apparent authority.

4.     The initial phases of the Project began as early as 2006, when eminent domain proceedings were commenced against specific property owners to obtain access to the land on which the Project was going to be constructed. At that time, PEG had purchased large quantities of steel pipe to be used on the Project, and had the pipe delivered and stored at various locations near the Project. Soon afterwards, numerous landowners brought legal actions contesting the right and authority of YCNGA to condemn their real property. As a result of that lawsuit, <u>Hill v. York County Natural Gas Authority</u>, 384, S.C. 483, 682 S.E.2d 809 (S.C. 2009), the Project came to a standstill, and the steel pipe lay unused and exposed to the elements, and were allowed to accumulate substantial amounts of rust and debris.

5.     On or about January 19, 2010, following a successful conclusion to the litigation, PEG solicited bids for the Project. Smith submitted a bid and was ultimately awarded the Project

pursuant to a Contract Agreement dated March 22, 2010, No., 2010-001 ("Contract").  A true and correct copy of the contract is attached as Exhibit A.

6. The Project consists of approximately thirty-nine miles of pipeline crossing a variety of geographical features in York County, Cherokee County, and Chester County, South Carolina, including wetlands, uplands, and areas that include rock formation.  Pursuant to the Contract, Smith was required to "furnish the necessary supervision, labor, materials, supplies, tools, and equipment … (to) install 39.22 miles of 12-inch steel gas pipeline and appurtenances in Cherokee, York, and Chester Counties, South Carolina" for the fixed sum of $11,505,242.00, plus additional work at specified unit prices.  The steel pipe to be used on the Project was the pipe that had been previously acquired by PEG and allowed to sit dormant during the eminent domain litigation.

7. Numerous issues arose in the course of construction that required additional work outside of the work required by the Contract and unexpected time delays. Under the Contract time delays will be billed out by Smith at $123,000.00 per day for standby.  These issues were addressed in concert with, at the direction of and with the approval of UEI and PEG representatives.  Despite changes in the scope of work and additional work that was required to address on site issues, many such changes were not reduced to a written change order signed by all the parties.   Nevertheless, all activities undertaken by Smith occurred at the direction of and with the knowledge, agreement and consent of PEG and UEI.

8. Specifically, the Contract called for Smith to install 6,678 feet of matting through wetland areas around the project.  Mats are fabricated platforms used to allow heavy equipment to cross soft soils during the construction process. The Contract provided that additional matting was to be provided by Smith at $450.00 per Mat.  Smith provided 2259 extra mats beyond the

original number specified in the Contract, for which, despite demand, PEG has refused to pay. (Smith provided1658 additional mats @ 160.00 each and 601 additional mats @450.00 each)

9. Additionally, Smith performed a function on the project known as "pigging," which refers to using a device known as a "pig" to clean the interior lining of pipe in preparation for use. Pursuant to the Unit Price Summary approved as part of Smith's bid package, the parties agreed to pay $0.75 per linear foot for all "extra" pigging.

10. The steel pipe that had been left exposed to the elements for the previous three years had substantial amounts of rust and debris required substantially more pigging runs than otherwise would have been required, resulting in extra pigging under the Contract.

11. While insisting that Smith perform extra pigging, UEI refused to pay the extra pigging rate stated in the Contract.

12. During the course of the Project, rock formations located in the pathway of the pipeline slowed progress on construction. Despite acknowledging the significant delays associated with drilling through rock and Smith's request to perform blasting, UEI insisted that Smith continue efforts to mechanically drill through the rock. After numerous drill bits were destroyed and after approximately 20 days of delay, UEI eventually relented and agreed to allow blasting to proceed, resulting in unnecessary delay to the Project at no fault of Smith, for which delay PEG has failed to pay under the Contract.

13. In addition to the foregoing, at the direction of the Defendant, Smith performed the following work for which payment has not been received:

        a.)     Relocating and building additional construction entrances
        b.)     Costs related to alternate pipe yard
        c.)     Additional rock ditch

      d.)    Removal of rip rap

      e.)    Additional water line

      f..)    Additional Hay

14. The Contract provided for a discount of 1% for payment within fifteen days of the invoice being submitted. UEI refused to promptly sign off on invoices submitted by Smith, resulting in delays by PEG beyond fifteen days. Nevertheless, PEG wrongfully took credit of 1% on invoices, contrary to the terms of the Contract.

## FOR A FIRST CAUSE OF ACTION
### (BREACH OF CONTRACT)

15. To the extent relevant, the allegations of the above paragraphs are realleged as fully as if repeated herein verbatim.

16. The parties entered into a valid contract pursuant to which Smith provided materials, goods and services for the benefit of the Project, and for which it is entitled to compensation under the terms of the Contract. Defendant PEG's failure to pay amounts due under the Contract constitutes a breach of contract for which Smith seeks and entitled to damages in an amount not less than Four Million, Eight Hundred Nine Thousand, Sixty-nine and 09/100 Dollars ($4,809,069.09), for pre-judgment interest from the date this account became due, and for costs rendered herein.

## FOR A SECOND CAUSE OF ACTION
### (QUASI-CONTRACT)

17. To the extent relevant, the allegations of the above paragraphs are realleged as fully as if repeated herein verbatim.

18. At the specific request of Defendants, Smith provided certain labor, services and materials to PEG for PEG's use and benefit, as outlined above. Such labor, services and

materials were provided by Smith with the reasonable expectation of payment and were not provided as a gift or gratuity.

19. Defendants were aware and/or should have been aware that Smith expected payment for its labor, services and materials, and that such labor, services and materials were not being provided as a gift or gratuity.

20. With full understanding of the above, PEG received and accepted the benefit and use of Smith's labor, services and materials for which Smith is reasonably entitled to compensation and repayment.

21. Despite Smith's demands for payment for the full value of its labor, services and materials rendered, Smith remains unpaid by PEG. PEG's refusal to pay for such labor, services and materials while reaping its benefit and use is inequitable and PEG has therefore been unjustly enriched.

22. Such conduct is wrongful, and has directly and proximately caused damage to Smith

23. The reasonable value of Smith's labor, service and materials to PEG is Four Million, Eight Hundred Nine Thousand, Sixty-nine and 09/100 Dollars ($4,809,069.09).

### FOR A THIRD CAUSE OF ACTION
### (ATTORNEYS' FEES PURSUANT TO S.C. CODE § 27-1-15)

24. To the extent relevant, the allegations of the above paragraphs are realleged as fully as if repeated herein verbatim.

25. Pursuant to its Contract with PEG, Smith provided improvements to certain real property for the benefit and use of PEG.

26. Pursuant to S.C. Code § 27-1-15, et seq., Smith made due and just demand for payment from PEG for the improvements, which demand has been denied.

27.  Based upon and due to the foregoing, Smith is entitled to reasonable attorneys' fees and interest incurred as a result of PEG's non-payment.

## FOR A FOURTH CAUSE OF ACTION
### (BREACH OF IMPLIED DUTY OF GOOD FAITH AND FAIR DEALING)

28.  To the extent relevant, the allegations of the above paragraphs are realleged as fully as if repeated herein verbatim.

29.  PEG's conduct breached the implied covenant of good faith and fair dealing that they owed to Smith, in one or more of the following particulars:

  (a)   In failing to tender payment to Smith for the work and services it performed pursuant to its Contract, despite repeated requests and demands;

  (b)   In attempting to force upon Smith unreasonable and unconscionable alterations to the terms of the Contract; and

  (c)   In such other particulars as will be proven at trial.

30.  Smith+ suffered damages as a direct and proximate result of PEG's breaches of their implied covenants of good faith and fair dealing, and is entitled to recover such damages as will be proven at trial.

## FOR A FIFTH CAUSE OF ACTION
### (NEGLIGENCE)

31.  To the extent relevant, the allegations of the above paragraphs are realleged as fully as if repeated herein verbatim.

32.  PEG and UEI failed to adequately supervise their agents, contractors and employees, investigate payment requests, and to make prompt payments to Smith.

33.  That the Defendants were negligent, grossly negligent, wanton, willful and careless in one or more of the following particulars:

    A.  In failing to properly hire and supervise employees;

    B.  In failing to properly store steel pipe needed for the construction of the Project and allowing such pipe to become rusted and filled with debris;

    C..  In failing to properly administer the Contract; and

    D.  In such other particulars as may be proven at trial.

  34.  All of the foregoing has directly and proximately caused damages and injuries to Smith herein in an amount to be determined by the trier of fact. Smith is informed and believes that it is entitled to an award of actual damages, together with punitive damages in an appropriate amount, and for the costs of this action.

August 16, 2011.       s/Herbert W. Hamilton
              Herbert W. Hamilton (I.D. No. 1690)
              HAMILTON MARTENS & BALLOU, LLC
              130 East Main Street,
              Post Office Box 10940
              Rock Hill, South Carolina 29731
              Telephone  803.329.7672
              Facsimile  803.329.7678

              ATTORNEYS FOR PLAINTIFF